Good morning. May it please the court. I'm Russell Hanlon, appearing for Appellants, Andrini and Company, and James De La Torre. This is an appeal from a preliminary injunction that enjoins Andrini and De La Torre from soliciting, placing, or accepting business from Gallagher's customers. The trial court concluded that Gallagher made a sufficient showing of a probability of success on the merits of its statutory misappropriation of trade secrets and unfair competition claims and the showing of irreparable harm. Now, the trial court's critical finding was that De La Torre took and used Gallagher's trade secrets and confidential information to solicit two of Gallagher's customers, NCBC and FLIOA. The main point that I want to make at oral argument today is that there is no evidence whatsoever that supports that ultimate finding. The facts that the trial court found incited to support that ultimate finding lack evidentiary support or are irrelevant. I'd like to focus first on the misappropriation claim. The trial court found that De La Torre copied 1,200 Gallagher files on four separate days during the three and a half months before he resigned. Now, that fact apparently is true. The problem is that Gallagher presented no evidence regarding the content of those files, except for the names of three files. Those three names are department code key, workshop information, and retirement. There's no claim nor evidence that any of those three files have secret or confidential information. Now, De La Torre made an offer of proof that all of the files that he copied were program materials for educational seminars that he presented. And Gallagher conceded that the program that he presented did not involve confidential information or secrets. Now, even though Gallagher might dispute De La Torre's characterization of what he took, the important point is that there is no evidence that the copied files contain any trade secrets or confidential information. Could I ask about one point that would not necessarily come from the files, and that is, if you have this serendipity or coincidence of timing in terms of these two clients then being acquired by Mr. De La Torre's firm and being told, well, you can get kind of the same terms, is that the potential use case? I believe not, Your Honor, because the law is very clear that if the clients contact him and say, these are the terms that we're under now, what can you do for us, that they can disclose the terms of their insurance contracts to him. And then there's no question about that. But do we have any evidence? In a lot of these cases they bring in an affidavit from the client that says, you know, I like Mr. De La Torre, I found out he moved, so I went to his firm. You know, he did not solicit me. We don't have that evidence, correct? We don't know how they got to the new firm. That's true, Your Honor, we don't. And I acknowledge that this preliminary injunction was sought right out of the box, you know, and so there wasn't any discovery taken. But we have to focus on who had the burden of proof. You know, they had the burden of proof to show that there was a misappropriation of trade secrets or confidential information. And Gallagher had the burden of proof to show that there wasn't an unlawful solicitation. So the trial court also found that the copy files included marketing budgets and business plans, but in support of that finding, the trial court cited an argument in a reply memorandum that Gallagher filed. Is that that document number 18? I believe so, Your Honor. And so this was just an unproven lawyer's argument. There's no evidence to support that characterization. The trial court also found that De La Torre accessed Gallagher files or information with his BlackBerry after he resigned. The court cited the unverified complaint. There's no evidence to support that finding. And then the court stated that he did not appear at some scheduled meeting with a Gallagher official. And that may be true, but that has nothing to do with whether or not he took confidential information or trade secrets. And so I think it's very important to recognize that Gallagher had the burden in the trial court and the burden on appeal to show that there is some evidence that De La Torre misappropriated trade secrets or confidential information. And Gallagher never put into evidence one document or any other evidence that it claimed was a trade secret or confidential information and that it proved was in De La Torre's possession after he resigned. Now I'd like to briefly focus on the solicitation element. In support of its finding that De La Torre solicited the two customers, the trial court cited the reply declaration of a Gallagher officer named Brown. But Brown could not and did not say that De La Torre solicited NCBC or FLIOA. He did say that De La Torre targeted NCBC. But that was just a conclusory statement based upon information and belief. It may be that De La Torre targeted NCBC after NCBC called him and said I want to do business with you. Now, De La Torre's position is that the two customers called him. Again, Gallagher may dispute that point, but the critical fact is that there is no evidence. And where is that in the record? Is that in his declaration? That they called him? Gallagher never said who called who. Brown said that... Did Mr. De La Torre say who called who? No, he did not. There's no evidence. His attorney said on the record... Nobody... That's right. His attorney said on the record that this is what his position is. My job would be a lot easier if he said that in his declaration. But their job is still very hard, because there is no evidence that De La Torre solicited either of these customers. They will not be able to cite any evidence to you. And so the record establishes that there was no showing of a probability of success on the merits and no showing of irreparable harm, because there's no evidence that any harm suffered by Gallagher resulted from any unlawful conduct by De La Torre or Andrini. So this court should reverse the injunction. Excuse me. I'd like to move on to another point. If this court is inclined to affirm the injunction, this court should rule that some of the terms of the injunction are overbroad. By law, an injunction cannot prohibit a former employee or the new employer from accepting the unsolicited business from the former employer's customers. When you say by law, what law are you referring to? Four cases. Witted, they're all cited in appellant's opening brief. Witted, W-H-I-T-T-E-D, Western Electroplating Foster, and the Aetna Building Maintenance case. The last one's a Supreme Court case, California Supreme Court case. Those are based on the principle that you really can't have one agreement masquerading as a noncompetition agreement, because it's not unfair competition if you don't solicit the people, correct? That's right. Yeah, that's right. So part of this preliminary injunction goes beyond prohibiting soliciting. That's correct. It definitely says you can't place or accept business, and your honor, those are the very words that I would ask that the court strike. The way you read it, it prohibits accepting business from whoever it is, say a former customer of the plaintiff, even though deletory did not solicit that business. That's correct. He just picks up the phone and they say, you know, this is NCBC, right, we'd like to place an order. He can't accept that order. Under the injunction, he cannot. And under California law, he certainly can, and that's the point. And this modification of the injunction should have retroactive effect, because, again, there's no evidence that deletory solicited NCBC or FLIOA. And so under the applicable rule of law, the injunction cannot prohibit them from doing business with those two customers. Could I ask another question on the solicitation? Sure. You have two clients, the company and the individual, correct? That's correct. And I guess there's some limited market on the federal plan. In other words, you're in this group of federal organizations. Right. Is the company appropriately restrained from solicitation if Mr. Deletory doesn't participate and doesn't provide them any confidential information about a prospective client? Should they be restrained from the soliciting problem? I think not, Your Honor. I think you're raising an excellent point. Certainly that to the extent that Andrini is on the receiving end of business because Deletory solicited or violated the injunction, now, there can be like a vicarious, but what you're saying is that, well, what if he's out of the loop? What if he's out of the picture? What if Andrini says to him, you can't do business for us, for these ten customers, then I don't see how the injunction could reach Andrini under those circumstances. But that's not a point. Did you argue that? That's not a point you raised. That's correct, Your Honor. I just want to double check that. All right. Yes. Now, the last point I'd like to make is that to the extent that the validity of the covenant not to compete is an issue in this appeal, this Court should rule that the covenant is not enforceable. Can I just say, and I'm not speaking because we don't caucus in advance, but I don't think that was a basis for the judge's order, in which case my preliminary view would be we ought not be figuring that out. So unless you can point me to where you think he made a decision on that, I didn't think that he did, and maybe he did that on purpose for whatever reason. I agree, Your Honor. I mean, that was my point of view, too. Gallagher said otherwise, and I briefed this in my reply brief anyway. I'd be happy to just rest my arguments on the covenant not to compete on my reply brief. So I'd like to reserve a few minutes for rebuttal. Unless this Court has any further questions, I have no further arguments to make at this time. Thank you. You can reserve your remaining time. Good morning, Your Honors. May it please the Court. Mike Burns from Seyfroth-Shaw, and I'm accompanied by Althea Bovell on behalf of Gallagher Benefit Services. It seems like we've been arguing different cases since we initially appeared before Judge Walker in the preliminary injunction and TRO hearings. I don't think there's a significant disagreement between the parties regarding the facts, excuse me, regarding the law. I think there's significant disagreement regarding the facts. Initially, it's important to note, Your Honors, that the burden of proof is not on Gallagher Benefit Services today. It's on the other side. They have to show that the district court abused its discretion, whether it be by application or misapprehension of the law, or whether it be by applying clearly erroneous fact findings. One thing that I think it's important to bring up is something you didn't hear about. A major component of the Court's ruling, and as set forth in the Court's questions at the preliminary injunction hearing, is based on credibility determinations and inferences drawn from comments made by counsel on behalf of Angiolini and Dellatori and declarations made by Mr. Dellatori. And I will shed some light on that. You know, I think we're looking at the order. So if you confine it to the order, because we can't divine additional extraneous comments the judge might have been making and questioning, aren't we really looking at whether this order is sustainable? That is true, Your Honor. But I think a necessary component to determine whether the order is sustainable would be to review the record as presented before you. And a component of that record is the oral argument of the parties that were there, including the specific questions and concerns raised by Judge Walker below. With the Court's indulgence, I'll raise those or bring those up if you're interested in hearing them as we move forward. After considering the evidence and making reasonable inferences based on the evidence before it, Judge Walker correctly issued a preliminary injunction. Well, why don't you back up a little bit? What about responding to his question that there is no evidence that Dellatori took a customer's list? What's the evidence that a customer's list was appropriated? Okay, I'll get to that, Your Honor. As a step back, we're not arguing that customer lists are the only form of trade secrecy. But Judge Walker depended heavily on the fact that a customer list was included, right? Correct. So what's the evidence that a customer list was taken? There is evidence in the record, and let me point out initially the citations for the Court, I think it would be useful for it, that in a declaration form, Mr. Dellatori indicated, and this is in his declaration lines 21 through 26, on the record page 132. And here's a quote. I took no material from Gallagher. In particular, the PowerPoint presentations were and still are with Gallagher. All the handout material was and still is with Gallagher. Not only did I not take any information belonging to Gallagher, but I even left my own personal effects, including family photographs, et cetera. Followed up by statements by counsel, Mr. Morgan, at the hearing. This is his statement, and this is on lines 13 through 24 of the oral argument at the temporary restraining order. It's record site page 148. When Mr. Dellatori left, Your Honor, he was told to leave that day by Mr. Brown, who's here in court. Oddly enough, he's here with us today as well. That was my comment. Before he left, he turned in every single thing that he had, and we have witnesses to prove this. He left. Not only did he not leave with any Gallagher stuff, but when he left, he left without his own personal effects. He just walked out. They told him to leave that day, and so he walked out. We don't have anything. We don't have any computers. They have all the computers themselves. We don't have any literature. We don't have any documents. We don't have anything, and we would like to get his personal effects back. That is the groundwork with which this court must evaluate what comes next. What came next was a declaration by an expert hired by Gallagher to evidence that 1,200 documents that they did not have, that they never took, were in the possession, custody, and custody. But did the expert say that included customer lists? The expert did not say that, Your Honor. He didn't say that. So where is that? Let me ask my question again. Where is the evidence that a customer list was taken? I have two responses to that, Your Honor. I'm glad to hear. I'm asking the question. Okay. I apologize, but let me just say this. If the court is willing to accept argument of counsel as evidence, which I don't think it should, okay, the evidence is based on the inference, and the court specifically said, what else am I supposed to believe? What other inference am I to draw when they made the argument that they didn't take anything to use to solicit? The court expressly noted in its written order that the evidence was either scant or not significant, I think was his phrase. But this is not a repeal after trial. We just have to show a probability here without getting into the specifics of the standard. And the inference is a major component of the evidentiary proof that we set forth. I think, fairness to say ---- I mean, it's one thing to come barreling in and say there's 1,000 documents that he downloaded, because that always sounds bad. I mean, it does sound bad. But, you know, if he's downloading the company cafeteria menu and it's 1,000 documents, it's kind of irrelevant. So the argument I thought Mr. De La Torre made was there's nothing in those documents. So I guess maybe my first question in my little notes was what is the trade secret or confidential information? And I guess you've answered customer list by inference, correct? Well, no, Your Honor. To point out specifically, and this is something ---- Let's just start with that. So one of the ---- What is the trade secret? What is the trade secret or the confidential information? One of the answers to that is a customer list that is by inference from what? Well, I think the trade secret definition is set forth on the ---- You know what a trade secret is. Oh, I'm sorry. I'm not talking legal definition. I'm talking about what we claim our trade secrets are. That's on the record page 201 and 202. And it's originally set forth in the employment agreement that Mr. De La Torre signed. That was set forth in the moving papers. That was set forth in the complaint. So that's what our trade secret is. We've always heard it's PowerPoint presentations. And we said, no, no, that's not what we're arguing. We're actually arguing other things. Customer related information and related information. You're dancing on the question without answering it. Yeah. What is the trade secret that was taken? Well, Your Honor, I'm limited to the record. The evidence before ---- I guess you both are. I guess what I'm saying is, Your Honor, the statement that Mr. De La Torre's counsel made with respect to what the documents were, that's not evidence either. So you really have ---- You know what? Let's just stop for two seconds. The counsel's argument is not evidence. Okay. The judge's comments are not evidence. We have his order here, and based on Rule 65, that's what we're looking at. So now we're trying to figure out not what you claim in an abstract sense is trade secret, but what are the trade secrets taken upon which this injunction was issued? Other than the fact that there are documents in the 1200 that were taken, there's no record evidence to indicate what specifically that was. Okay. So of the 1200, what's in there? What's in there that's a trade secret? There's no record that says ---- Do you want to know what the record says? All right. There's nothing in the record that says what those are other than the three identifications that were ---- I think that's your problem. That's your problem. There's nothing in the record that says what, you know, 1117 plus 150 is what? 1267 files contained. There's nothing in the record that says what's in there. I don't disagree with that statement, Your Honor. Well, then, what evidence is there that a trade secret was misappropriated, whether it's a customer list or something else that you claim is a trade secret? Well, I think the evidence is, and I didn't write the order, but I think the evidence that Judge Walker relied upon was an inference that he drew from truth, misstatements of truth with respect to what was taken, and the court concluded based on the misstatements in the declaration by Mr. Dellatore and based on the misstatements by counsel in record that what else could it have been? That is the record before us, and that's all I can present. Here's his finding, and this is, I guess, what we have to benchmark. He took, that's Mr. Dellatore, took and utilized information central to Gallagher's competitive advantage, including customer lists. So it's information central to the competitive advantage, including customer lists. So we have to see if there's some evidence to support that finding. And there's no customer lists in this group of computer documents. Well, there's no customer list reference in the document presented to the court. That's not necessarily the case that there isn't in that, but that's beyond the record. Right. I mean, I'm sure there are customer lists in the company files. So if we don't have anything specific that we can pin it on, that seems to me just something we have to evaluate under the trade secret. But I don't think the game's over because you also have an unfair competition claim, which is based on solicitation. So then my next question, and I'm not going to preclude, there may be more trade secret questions from my colleagues, but on the solicitation issue, what is the evidence of solicitation of the Gallagher clients? And that's a good question. I think it also can be related to what I'm going to talk about solicitation, taking it back to what was actually misappropriated. We have a situation here with respect to solicitation that isn't simply notifying. You know, I'm moving from one company to the next company. If that's permissible under the law, we're not attempting to, and nor do I believe the court did restrain that type of conduct. What was restrained and what we are having concerns with is a kind of totality of the circumstances with respect to Mr. Dellatore's conduct. I have two young children. Sometimes when they take cookies and they have crumbs for them. Can I just stop you? Yep. Not that I'm not interested in your children. Fair enough. Because we can talk about that later. Okay. Okay. What is the evidence of solicitation? Well, that's what I'm getting to. Well, but your children aren't going to provide that evidence. The cookies, you know, the cookie crumbs are not providing the evidence. I want to know where in the record I look. Now, you can tell me that it's going to be like customer records and it's not really there and it has to be divined from A, B, C, and D, but I need to know where to look. Sure. The overall evidence shows that Mr. Dellatore held meetings with NCBC and FLIOA. With respect to ñ I'm looking where to find those. When you say meetings, you're talking about before or after he left Gallagher or both? Before and after. I mean, I think the before is a component that's very important just as much as it is after because it shows that this is something that was contractually restricted. He had a meeting, and if you look in the record, well, let me just get to the next thing. There's also seminars that he put on, seminars that were planned when he was employed by Gallagher and seminars that were still marked after the fact that he was no longer with Gallagher. There's also some interesting information. I'm trying to understand those seminars because some of the materials he downloaded, I think he said, well, look, this is stuff planned for my job and it was part of my job and I downloaded it. So was there something improper about the seminars? Sure. If I am at a law firm, Your Honor, and I'm putting on a seminar in one month and I send out a notice to like 100 clients about that, then I leave my law firm and continue to put that seminar on for those 100 clients, that is an improper form of solicitation. In addition to, there's some interesting information that's set forth on a website on FLIOA where Mr. Dellatore's phone number is appearing on that, but the phone number is not a Gallagher phone number. It's a personal cell phone number, but it still says Federal First Gallagher Benefit Services on it. So even after he was not working at Gallagher anymore, there's still a confusing disclosure to FLIOA and its members. Is that a Gallagher website? No, it was a FLIOA website. FLIOA website. Federal law enforcement. Right, right. Do we know that Mr. Gallagher put that there? Mr. Dellatore. Dellatore, excuse me. Well, no, we don't know that, but the fact that there was a phone number there that is not a stale number or a Gallagher number and that it was his cell phone number, a reasonable inference can be drawn that either he did it or someone did it at his request. Unless, yeah, that's really where we come to with that. With respect to the solicitation as well, he made specific misrepresentations to one prospective client, I believe it was the NCBC, regarding Gallagher's ability to service the NCBC after his leaving, and he said that they couldn't do so. And if you went along with me over to Andrini, there would be a smooth transition. It would be business as usual. Is that in Mr. Brown's? Whose affidavit is that coming from? That's in Mr. Brown's declaration, paragraph 4, lines 15 through 20, record site page 97. Okay, thank you. The information regarding the seminars that were put on, that were scheduled to be put on as a Gallagher employee and that were put on after are also in Mr. Brown's declaration, paragraph 24, lines 18 through 21. That's in 197 of the record. The information regarding the Mr. Gallagher, excuse me, I'm doing what you're doing, Mr. Dellatore's name appearing on the FLEO website is record page 236. There's a couple comments, and I appreciate that argument of counsel isn't something that's evidenced, but there is something that we would like to point out. On page 24 of the record, in a letter dated November 19th of 2007, Mr. Morgan wrote a letter to the court inquiring about some things with respect to its order. And here's a quote from that letter. As you know, these accounts were contacted before a restraining order was issued. And we contend that that's an admission of the attorney on behalf of its client that Mr. Dellatore and or Andrini contacted, initiated contact with, the individual clients and prospects at issue. Did it say who did it, whether it was the company or Mr. Dellatore? It didn't indicate who. I think the word that was used was these. Do you agree that someone at the company other than Mr. Dellatore would not be precluded from contacting these people? The employment agreement, which is something we haven't talked about, indicates that you can't directly or indirectly engage in conduct. I think that I could imagine a set of circumstances which would be permissible, meaning that we could not prevent Andrini from doing it. I could also imagine a set of circumstances which would not be permissible. And it depends on how it would come down. Exactly, Your Honor. I think that's a very fair question. I'm running out of time, I believe, and I just wanted to bring up, I think the easiest way for the court to resolve this, and again because I've been involved in this since October of 2007, I have a lot more knowledge about it even than my opposing counsel, who's only here for the appeal. But I think the court necessarily and the questions that were asked. He's kind of on the same ground we are, which is we're only looking at the records. Well, I understand. But based on the briefing that we submitted to the court and based on the questions that he asked, the concept of the narrow restraint exception, Ninth Circuit law, was definitely at issue. And under Ninth Circuit law, which as Judge Gould indicated this morning, a panel such as yourself is obligated to follow, absent certain rules with respect to en banc situations, you're supposed to follow the narrow restraint exception, which I understand that California law and the cases cited by our opponent have come across a different way. I also understand that the Edwards versus Arthur Anderson decision was argued before the California Supreme Court involving very similar issues last week. But right now we don't have any decisions. So the narrow restraint exception is simply, in a nutshell, a rule of law that says that so long as a narrow segment of the market is off limits, a non-solicitation agreement or restrictive covenant or non-competition agreement, however you want to characterize it, is something that's lawful. The cases of import in that regard. Did the district court rule on the legality of the agreement itself? The district court did not expressly rule on it. I submit to Your Honor that the only way to conclude that Mr. Dellatore and Mr. Andrani could not place business was to give full effect to the employment agreement, which prohibited the placement of business. Do you want to respond briefly to Ms. Hanlon's argument about the breadth of the injunction? In other words, enjoining acceptance of business even though it was not solicited? Yeah, and that's the perfect segue with what we're getting to. The Ninth Circuit, in cases dating back to 1987, basically, and I can just give you the sites of them very briefly. It's the General Commercial v. TPS case, 126 F. 3rd, 1131. The Campbell v. Board of Trustees, 817 F. 2nd, 499. And IBM v. Majorek, 191 F. 3rd, 1033. It has held that similar agreements or restrictions as set forth in this case are enforceable so long as they don't prevent an individual or a company from engaging in a large section of the market. This case, and there's questioning again in there, and I reluctantly have to admit that it's not set forth in the court's order, but the only evidence before the court is that if the court were to restrict or continue the injunction with respect to placing of business, it would only affect approximately 10 percent of the market. So 90 percent of the market would still be available to both Andrani and to Mr. Dellatore. Is that percentage of the market in dollar volume business or in number of entities? It's based on, well, there were actually several different statistics that were put out there. It wasn't clear, or the question was not asked as to what that was. My understanding is, Your Honor, is that it's simply based on the total number of potential organizations and employees, not necessarily on revenue. That doesn't, you know, that argument you're making, though, doesn't directly answer Mr. Hanlon's point, which is based upon, as I understand, the state law. Yeah, and what I'm saying is, Your Honor, state law is not applicable to this court, especially when the Ninth Circuit law is contrary. In that regard, there's no basis to. Just a minute. Aren't you trying to enforce a state-created right? That is true, Your Honor. Why doesn't state law govern that? Because this court has previously, from 1987 to the present, concluded that until the California Supreme Court rules on the issue, that they are going to make an educated guess as to what the California Supreme Court will do. We don't have such guidance from the California Supreme Court. And in the absence of. It might come down soon, huh? I have a difficulty speculating as to what this court is going to do, never mind what another court I'm not in is going to do. But I think that we should see something, you know, in the next month, two months, or three months. All right. My buzzer is about to beep. Is there any other question I can respond to? Any further questions, Judge Gold? No, thank you. Thank you. The answer to this court's question about whether there's any evidence that a customer list was misappropriated is that there is no such evidence. In fact, there is never any evidence of a customer list. You know, as Mr. Burns points out, the test on a preliminary injunction is not certainty, but probabilities, right? And likelihood. And the finding that Judge Walker makes is that I think he said it's likely. That's all. Isn't that all he has to find? A probability of success. But when there's no evidence, Your Honor, that there was any trade secrets. Well, there are these inferences that can be drawn. That's Mr. I think Burns' argument, right? Okay. Well, another point I was going to make about the inferences is that their claim about the misappropriation of trade secrets revolves around the fact that De La Torre took these 1,200 files, but the content of those files was never identified. This Court cannot infer that there were trade secrets or confidential information in those files if this Court does not know what was in those files. Well, Judge Walker makes this finding, right? He says it is likely that many of the allegedly misappropriated materials would qualify as trade secrets under the UTSA. Isn't that all he has to find, a likelihood that that would be so? But, Your Honor, what is the likelihood? You do not know the content of even one of those 1,200 files. How can you find that we're going to find anyway that they contain trade secrets or confidential information? You don't know what's in those files. They had the evidence. So you're saying so your case is the evidence is not sufficient to sustain that inference. That's correct. There's no evidence whatsoever. We can't draw inferences from evidence when we don't know what the evidence is. I mean, that's pretty much what I'm saying here. What about the solicitation where Mr. Brown's affidavit talks about timing before and after and seminars and the FIOLA website and just a whole series of things that suggest there's solicitation at least as to a couple clients? Isn't that a baseline enough? It's not enough because they have to show that De La Torre solicited them. As a matter of law under California state law, De La Torre is entitled to accept the business of those customers if they contact him. So that's one of the critical elements in their case that they have to prove. Now, when you say, by the way, as a matter of state law, you agree that the issue has not been definitively decided by the state Supreme Court? That's only about the narrow restraint theory. That gets into the covenant not to compete, the narrow restraint theory. Within the next 80 days, the California Supreme Court will decide if the Ninth Circuit rule is valid California law or not. But that goes into the covenant not to compete. And there we're talking about two different things. He's talking about the 10 customers out of 50 or whatever. And so, you know, that's not what I'm talking about. But, you know, the chocolate found that the ‑‑ I mean, they've given some evidence on these two customers. You dispute it because you say that evidence doesn't actually show solicitation? What evidence? The brown evidence. Yes, that's right. I don't think he says anything about Fliola. He just says that De La Torre used to handle this account, and then the account switched. Then about NCBC, the one thing he said was that De La Torre targeted NCBC. Right. Yeah. Yeah, that's the word he used. Didn't say who called who. He couldn't say who called who. You know, he wouldn't know that. And so this is just a conclusory statement based upon information and belief. And so there's law that says that that's not enough to get you an injunction. And like I say, targeted, that could mean, yeah, maybe he did. Maybe after NCBC called De La Torre and said, we want to do business with you, he said, yeah, I'll target them. So they have to prove who called who. And they could have got that from the customers, assuming that they couldn't get it from us right out of the box. But they didn't present that. And that's a critical element in their case, that there was a solicitation. How long after Mr. De La Torre left did they file the injunction motion? I don't recall. I think it may have been the same day or within days. I think they filed a complaint and then went in for a TRO and then didn't even serve us with the TRO papers, as they're entitled to do, the next party. So, you know, I mean, one thought occurred to me. I don't want to ‑‑ I don't want this court to rule this way, but I think what the trial court should have ruled at best for Gallagher is a preliminary injunction denied without prejudice. That's the way it should have been. You don't have the evidence. You haven't proven that there is a trade secret. You haven't proven that they took it. And you haven't proven who called who, that there was a solicitation. And so it's denied without prejudice. But that's not the decision before you. The decision before you is the one that the judge made. And that's based upon clearly erroneous findings. And so this court should reverse. All right. Unless this court has any other questions, I have no further arguments to make. And Jurnee and De La Torre are prepared to submit the matter. All right. The case of Gallagher v. De La Torre is submitted. I'd like to thank both counsel for your arguments. It's an interesting case and a lot of record. Thank you. We're now in recess for this morning.
judges: Tashima, McKeown, Gould